Filed 8/11/25  P. v. Davis CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B337413 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA145980) |
| v. | |
| AARON DAVIS et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Ricardo R. Ocampo, Judge.  Affirmed.

Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant Aaron Davis.

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant Joshua Rene Hildreth.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant Arthur Lewis.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Defendants and appellants Aaron Davis, Arthur Lewis, and Joshua Hildreth appeal from the trial court's orders denying their petitions for resentencing under Penal Code section 1172.6.[1] The court found defendants ineligible for resentencing relief because, although they were charged with murder in 2018, they entered no contest pleas to voluntary manslaughter one year after Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) went into effect. Defendants contend that by excluding those in their position from relief—defendants charged with murder before the bill's effective date but who entered pleas after that date—section 1172.6 violates equal protection guarantees. We find no equal protection violation and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2018, the People charged Davis, Lewis, and Hildreth with murder (§ 187, subd. (a); count 1); three counts of attempted murder (§§ 187, subd. (a), 664; counts 2, 3, 5); shooting at an occupied motor vehicle (§ 246; count 4); and shooting at an inhabited dwelling (*ibid*.; count 6).[2] The murder count alleged that the murder was intentional and perpetrated by means of

---

[1] All further undesignated statutory references are to the Penal Code.

[2] The information charged four other individuals along with defendants. It alleged seven total counts; the additional count concerned a defendant who is not a party to this appeal.

discharging a firearm from a motor vehicle at persons outside the vehicle with the intent to inflict death (§ 190.2, subd. (a)(21)) and that defendants committed the offense in furtherance of gang activities (§ 190.2, subd. (a)(22)). The three counts for attempted murder each included an allegation that defendants committed attempted murder willfully, deliberately, and with premeditation (§ 664, subd. (a)). The information further alleged Davis had previously been convicted of a prior strike (§§ 667, subds. (b)–(j), 1170.12).

In January 2020, the court held a hearing on defendants' plea agreements. The court explained that each defendant would be pleading no contest or guilty to voluntary manslaughter and individually confirmed defendants' understanding of the pleas and their respective sentences. The court granted the People's motion to amend the information by interlineation to add a count for voluntary manslaughter (§ 192, subd. (a)) as to each defendant.

The prosecutor informed defendants that the maximum sentence they could each receive if they went to trial on the murder count was life without parole. The prosecutor further asked if defendants "had enough time to talk to [their] lawyer[s], discuss the facts of the case and [their] rights and defenses." Each defendant confirmed that he had. Each defendant then pled no contest to voluntary manslaughter and admitted the gang allegation. Davis admitted the allegation that he suffered a prior strike conviction. Pursuant to the plea agreements, counts one through six were dismissed as to each defendant.

The court sentenced Hildreth to the low term of three years for voluntary manslaughter, plus a consecutive term of 10 years for committing a violent felony for the benefit of a gang (§ 186.22,

3

subd. (b)(1)(C)), for a total term of 13 years.  The court sentenced Davis to the low term of three years for voluntary manslaughter, doubled to six for the prior strike, plus 10 years for committing a violent felony for the benefit of a gang, for a total term of 16 years.  The court sentenced Lewis to the high term of 11 years for voluntary manslaughter, plus 10 years for committing a violent felony for the benefit of a gang, for a total term of 21 years.

In 2022, defendants each filed form petitions alleging their eligibility for resentencing relief under section 1172.6.  The court found the petitions facially sufficient, appointed counsel, and set briefing schedules.  The People filed oppositions to the petitions.

In March 2024, the court held a consolidated hearing on defendants' petitions.  After hearing argument, the court denied the petitions for failing to make a prima facie showing of eligibility for relief under section 1172.6.  Citing *People v. Reyes* (2023) 97 Cal.App.5th 292 (*Reyes*), the court found section 1172.6 required defendants to show that they had been convicted under a theory of murder liability later invalidated by Senate Bill No. 1437 and therefore could not be convicted under the current law after its amendment.  The court concluded defendants could not make this showing because they were convicted by plea after Senate Bill No. 1437 went into effect.  The court further concluded that later amendments expanding section 1172.6 to include attempted murder were irrelevant because defendants were prosecuted for murder.

Defendants timely appealed.[3]

---

[3]    On appeal, counsel for Davis and Lewis initially filed "no merit" briefs pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216.  They later filed supplemental briefs joining the arguments

4

## DISCUSSION

### I. Section 1172.6 Does Not Violate Equal Protection Guarantees

#### A. Applicable legal principles and standard of review

On January 1, 2019, Senate Bill No. 1437 took effect "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see also *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) The bill amended section 188 by adding the requirement that, except as stated in section 189, subdivision (e), "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill No. 1437 created a procedure, now codified at section 1172.6, in which persons convicted of murder under the former law may seek resentencing if they could no longer be convicted of those offenses under amended section 188. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *Gentile*, *supra*, 10 Cal.5th at p. 847.) In 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill

---

in Hildreth's opening brief and moving to strike their respective *Delgadillo* briefs. This court granted the motions, struck Davis's and Lewis's *Delgadillo* briefs, and deemed their proposed supplemental joinder briefs filed.

No. 775) further expanded the remedy to include defendants convicted of attempted murder under the natural and probable consequences doctrine. (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1004.) The bill also clarified that defendants who could have been convicted of murder on an invalid theory, but who were ultimately convicted only of manslaughter either at trial or by plea, are eligible to seek resentencing. (*People v. Lezama* (2024) 101 Cal.App.5th 583, 590 (*Lezama*).)

A defendant seeking resentencing relief under section 1172.6 must file a petition declaring the defendant's eligibility under the statute. (*Strong*, *supra*, 13 Cal.5th at p. 708.) To make a prima facie showing of eligibility, a defendant must attest that: (1) "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine"; (2) the defendant "was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the [defendant] could have been convicted of murder or attempted murder"; and (3) the defendant "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)– (3).)

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis*, *supra*, 11

6

Cal.5th at p. 971.)  The trial court's denial of a resentencing petition at the prima facie stage " 'is a purely legal conclusion,' " which appellate courts review de novo.  (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

### B.    Discussion

Section 1172.6 does not afford resentencing relief to defendants charged with murder who were convicted of voluntary manslaughter after Senate Bill No. 1437's effective date of January 1, 2019.  In *Reyes*, *supra*, 97 Cal.App.5th at page 298, the court held that a defendant who pled no contest to second degree murder after Senate Bill No. 1437's effective date could not show he could no longer be convicted " 'because of changes' " Senate Bill No. 1437 made to the law.  Other courts have come to the same conclusion.  (*Lezama*, *supra*, 101 Cal.App.5th at pp. 588–590 [legislative intent of Sen. Bill No. 1437 was to provide relief for defendants who entered pleas when imputed malice theories were still valid].)  Courts have also expressly concluded that defendants *charged* with murder before Senate Bill No. 1437's effective date are ineligible for resentencing relief if they entered pleas to voluntary manslaughter *after* Senate Bill No. 1437 took effect.  (*People v. Hickman* (2025) 110 Cal.App.5th 1262, 1264–1265; *People v. Gallegos* (2024) 105 Cal.App.5th 434, 439–443 (*Gallegos*); *Lezama*, at pp. 585–589.)

Defendants concede their ineligibility for resentencing under the statute and acknowledge that the trial court was required to apply *Reyes* and deny their petitions.  However, defendants assert section 1172.6 "raises serious equal protection concerns" by excluding from eligibility defendants who were charged with murder before, but were convicted of voluntary

7

manslaughter after, Senate Bill No. 1437's effective date.  This argument lacks merit.

"The equal protection clause of the Fourteenth Amendment to the United States Constitution provides that no state may 'deny to any person within its jurisdiction the equal protection of the laws.'  This provision is 'essentially a direction that all persons similarly situated should be treated alike.'  [Citation.]  'At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification.'  [Citations.]"[4]  (*Hardin*, *supra*, 15 Cal.5th at p. 847, fn. omitted.)

"The degree of justification required to satisfy equal protection depends on the type of unequal treatment at issue.  Courts apply heightened scrutiny when a challenged statute or other regulation involves a suspect classification such as race, or a fundamental right such as the right to vote, and accordingly will demand greater justification for the differential treatment.  [Citations.]  But when a statute involves neither a suspect classification nor a fundamental right, the 'general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a

---

[4]      The California Constitution also guarantees equal protection of the law.  (Cal. Const., art. I, § 7, subd. (a).)  Defendants do not specify whether they rely on the U.S. Constitution or the California Constitution for their argument.  However, "we see ' "no reason to suppose" that federal equal protection analysis would yield a result different from what would emerge from analysis of the state Constitution.'  [Citation.]"  (*People v. Hardin* (2024) 15 Cal.5th 834, 847, fn. 2 (*Hardin*).)

legitimate state interest.' [Citations.]" (*Hardin*, *supra*, 15 Cal.5th at p. 847.)

Relying on *People v. Olivas* (1976) 17 Cal.3d 236, and *People v. Nguyen* (1997) 54 Cal.App.4th 705, defendants argue that heightened scrutiny should apply here because section 1172.6's resentencing scheme implicates their fundamental personal liberty interests. However, neither *Olivas* nor *Nguyen* supports defendants' argument. These decisions imposed heightened scrutiny after concluding that statutes imposing different initial sentences of incarceration for comparable crimes implicated the defendants' personal liberty interests. (*Olivas*, at pp. 242–243 [statute granted discretion to commit juvenile convicted in adult criminal court to a longer term than if sentenced as adult]; *Nguyen*, at p. 713 [statute subjected petty thieves with prior theft conviction to 25 years to life, but petty thieves with no prior theft conviction to misdemeanor].) *Olivas* does not stand for the proposition that a defendant has " 'a fundamental interest in a specific term of imprisonment or in the designation a particular crime receives.' [Citations.]" (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838 (*Wilkinson*); *People v. Turnage* (2012) 55 Cal.4th 62, 74 (*Turnage*).)[5]

---

[5] Defendants contend they are similarly situated to other defendants seeking resentencing who were charged with murder prior to January 2019, but were deemed eligible for section 1172.6 resentencing relief because they were convicted before Senate Bill No. 1437's effective date. We do not address whether the two groups are similarly situated and instead consider only "whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*Hardin*, *supra*, 15 Cal.5th at p. 851.)

"Classifying defendants by sentencing date is not made on the basis of race, alienage, national origin, gender or legitimacy, which requires a greater level of scrutiny.  [Citations.]  Generally, if the classification does not involve a suspect class, legislation is presumed to be valid under the equal protection clause if the statutory classification is rationally related to a legitimate state interest."  (*People v. Mora* (2013) 214 Cal.App.4th 1477, 1483, citing *Wilkinson, supra,* 33 Cal.4th at p. 836.)  Rational basis review, "[c]oupled with a rebuttable presumption that legislation is constitutional," "sets a high bar before a law is deemed to lack even the minimal rationality necessary for it to survive constitutional scrutiny."  (*People v. Chatman* (2018) 4 Cal.5th 277, 289.)  "Under this deferential standard, we presume that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.'  [Citation.]  The underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.'  [Citation.] . . . 'If a plausible basis exists for the disparity, courts may not second-guess its " 'wisdom, fairness, or logic.' " '  [Citation.]"  (*Hardin, supra,* 15 Cal.5th at p. 852.)

As other courts have concluded, and defendants here acknowledge, section 1172.6's purpose was "to provide retroactive relief to defendants who were, or who could have been, convicted of murder" under a theory of imputed malice before Senate Bill No. 1437 eliminated these theories as a basis for liability.  (*Reyes, supra,* 97 Cal.App.5th at p. 299; see also *Gallegos, supra,* 105 Cal.App.5th at p. 443; *Lezama, supra,* 101 Cal.App.5th at p. 590.)  In other words, the Legislature intended to provide a remedy to those defendants who would otherwise be unable to benefit from

10

Senate Bill No. 1437's changes to the law. (See *People v. Patton* (2025) 17 Cal.5th 549, 558 ["The Legislature, to provide relief to those with existing murder convictions dependent on theories of the crime it had rejected, devised a path to resentencing."].)

It was therefore indisputably rational for the Legislature to exclude from section 1172.6's provisions defendants who were convicted after Senate Bill No. 1437 took effect, since those defendants would, by virtue of the date of their convictions, receive the benefit of the changes to the law. Plea agreements in California are " 'deemed to incorporate and contemplate . . . existing law . . . .' " (*People v. Gipson* (2004) 117 Cal.App.4th 1065, 1070.) Moreover, the Legislature could rationally anticipate that once Senate Bill No. 1437 went into effect, defendants would not agree to, and the trial court would not accept, negotiated dispositions that were no longer reasonable or lacked a factual basis because the previously charged murder or attempted murder was being prosecuted on an invalid theory. (*Gallegos*, *supra*, 105 Cal.App.5th at p. 443, fn. 4 [defendant whose plea was negotiated, but not yet entered, before effective date of Sen. Bill No. 1437 could have withdrawn from plea after that date instead of accepting it].) And, to the extent a defendant's conviction after January 1, 2019, resulted from a prosecution based on an invalid theory of murder or attempted murder, the Legislature could reasonably determine that such a defendant would already have a remedy by way of, for example, a direct appeal.

The Legislature, therefore, plainly had a rational basis for limiting the retroactive relief set forth in section 1172.6 to only those convicted of voluntary manslaughter before Senate Bill No. 1437 made ameliorative changes to the law. "[T]he practical

11

necessity that a statutory change have a beginning provides a rational basis for classifications that fall on either side of the statute's effective date." (*People v. Verba* (2012) 210 Cal.App.4th 991, 996.) " '[T]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.' " (*People v. Floyd* (2003) 31 Cal.4th 179, 191, quoting *Sperry & Hutchinson Co. v. Rhodes* (1911) 220 U.S. 502, 505.)

On appeal, defendants do not contend that section 1172.6's eligibility requirements have no rational relationship to the state's legitimate interest in creating a retroactive remedy. Instead, defendants contend that *other* rational bases exist to deem defendants charged before Senate Bill No. 1437's effective date eligible for resentencing even if they entered pleas after that date. That alternative reasons may exist to include defendants in the scope of the statutory remedy does not satisfy defendants' rigorous burden on rational basis review to "negate[ ] ' "every conceivable basis" ' " for the Legislature's decision not to do so. (*Turnage, supra,* 55 Cal.4th at p. 79, quoting *Heller v. Doe* (1993) 509 U.S. 312, 320.)

Even considering defendants' proposed justifications for expanding eligibility for relief under section 1172.6, their arguments find no support in the law. For instance, defendants argue that they should be deemed eligible for resentencing because their 2020 plea convictions to voluntary manslaughter "may have derived from an initial murder charge that could have been based on the natural and probable consequences doctrine." However, even assuming the People charged defendants with murder under an invalid theory in 2018, defendants fail to explain how this creates the logical inference that they could

12

have entered pleas under those same theories in 2020, a year after Senate Bill No. 1437 eliminated them. As the court explained in *Lezama*, section 1172.6 requires "that at the time of conviction—i.e., the time the plea was entered—the only way to a murder conviction was through an imputed malice theory. *As a matter of law, this cannot be true for a person, like defendant, who pled guilty to voluntary manslaughter at a time when imputed malice theories had already been statutorily eliminated.*" (*Lezama*, *supra*, 101 Cal.App.5th at p. 590, italics added, fn. omitted.)

Defendants do not contend otherwise. They do not proffer facts or citations to authority to support their assertion that their pleas preserved the People's ability to pursue murder convictions based on the natural and probable consequences doctrine, notwithstanding the changes Senate Bill No. 1437 made to the law a year prior. "[W]e may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.)

As we understand their argument, defendants additionally contend that Senate Bill No. 775 eliminated accomplice liability for voluntary manslaughter based on the natural and probable consequences doctrine, thus raising equal protection concerns for defendants who may have been convicted of voluntary manslaughter on a natural and probable consequences theory before 2022. Defendants argue that this legislative intent is consistent with the overall purpose of section 1172.6 and "follows" from its other provisions. However, neither the legislative history nor the statutory language supports defendants' position.

Senate Bill No. 1437 addressed accomplice liability only for murder and amended only the statutory provisions related to murder.  (Sen. Bill No. 1437, §§ 2, 3.)  The corresponding resentencing scheme in section 1172.6 is similarly limited in scope.  "[S]ection 1172.6 applies to those who pled guilty to manslaughter *after being charged with murder* and who would have been subject to prosecution for *murder* under a felony-murder theory, the natural and probable consequences doctrine, or any other theory of imputed malice.  (§ 1172.6, subd. (a).)" (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211, italics added.)  Thus, the resentencing scheme applies "to those petitioners who entered a plea to manslaughter only if, at the time the plea was entered, the only way *to a charged murder conviction* was through an imputed malice theory eliminated by Senate Bill No. 1437." (*Gallegos*, *supra*, 105 Cal.App.5th at p. 445.)

Senate Bill No. 775's expansion of the section 1172.6 remedy similarly had no bearing on the validity of imputed theories of liability used to secure voluntary manslaughter convictions.  (*Lezama*, *supra*, 101 Cal.App.5th at p. 590 [Sen. Bill No. 775's reference to manslaughter made relief available to defendants convicted by plea or trial when prosecution could secure conviction for *murder* only through imputed malice theory].)  We have no basis to conclude that the Legislature enacted Senate Bill No. 1437 to eliminate any theories of voluntary manslaughter liability beyond those expressly articulated in the legislation.

Finally, defendants contend that the People could have proceeded on invalid theories to convict them on the attempted murder charges, since the Legislature did not amend

14

section 1172.6 to include attempted murder until two years after defendants entered their pleas.  (Sen. Bill No. 775.)  This argument also fails.  Section 1172.6 provides relief only if the prosecution could have relied on a theory invalidated by Senate Bill No. 1437 to pursue a conviction, not for "dismissed charges separate and apart from the conviction at issue."  (*Gallegos*, *supra*, 105 Cal.App.5th at p. 444.)  Defendants' three attempted murder counts were unrelated to their eventual voluntary manslaughter convictions.  Later legislation expanding section 1172.6 to include attempted murder convictions is irrelevant to the determination of whether defendants established a prima facie showing of eligibility in this case.[6]

---

[6]    Because we conclude defendants failed to show that section 1172.6 raises equal protection concerns, we do not reach defendants' contentions about the application of the canon of constitutional doubt.

## DISPOSITION

The orders denying defendants' petitions for resentencing under section 1172.6 are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.